## Martin's Estate.

*Decedents' estates—Claim for boarding—Presumption of periodical payments—Rebuttal of presumption—Evidence.*

A claim against an estate of a decedent for nineteen months' boarding at $20.00 per month should be allowed, where the evidence shows that the decedent had boarded with the claimant for many years, and had regularly paid her $20.00 per month until nineteen months before his death; that some time after the beginning of that period he had told claimant that he had borrowed money on his bank stock, and would not pay her for board until he had recovered back his bank stock, and that plaintiff had agreed to this; that decedent never did get back his bank stock, and the loan for which it was pledged was paid out of his estate; and that at the time of his death he had not paid any board for nineteen months.

Argued April 21, 1913. Appeal, No. 1, April T., 1913, by Mary L. Moorhead, from decree of O. C. Fayette Co., Dec. T., 1911, No. 16, dismissing exceptions to adjudication in Estate of William C. Martin, deceased. Before RICE, P. J., HENDERSON, MORRISON, ORLADY, HEAD and PORTER, JJ. Reversed.

Exceptions to adjudication. Before WORK, J.

The facts are stated in the opinion of the Superior Court.

*Errors assigned* were in dismissing exceptions to adjudication.

*A. E. Jones,* for appellant.

*C. B. Hollingsworth,* with him *Wooda N. Carr, H. E. Marker* and *R. E. Best,* for appellee.

OPINION BY MORRISON, J., July 16, 1913:

The decedent, William C. Martin, had resided for a long term of years with the family of the appellant, Mary L. Moorhead, and there is evidence that he had been paying for his boarding $20.00 per month. In the distribution of the estate the appellant claimed for board for the decedent at the rate of $20.00 per month from October, 1907, to May 9, 1909,—nineteen months—amounting to $380. The learned judge of the orphans' court rejected this claim and the appellant excepted to the decree and appealed.

A careful examination of the testimony leads us to the conclusion that there was sufficient evidence to sustain the appellant's claim and that the court erred in rejecting it. We think the testimony was sufficient to establish the fact that the decedent boarded with the appellant during the period above stated under an agreement to pay $20.00 per month to the appellant and that the evidence overcame the presumption of periodical payments, such as are usually made under the circumstances.

Sherman Moorhead, the nineteen-year old son of the appellant, was sworn and testified: "Q. How long had Mr. Martin been with your folks? A. Before I remember. Q. What board did he pay? A. $20.00 per month. Q. He paid $20.00 in the old house and agreed to pay $20.00 in the new house? A. Yes. . . ." This witness was recalled and testified: "Q. Did you ever hear any conversation between your mother and Mr. Martin during the time you lived in the Sutton house and about the time you moved into the new house with reference to Mr. Martin's board? A. Yes. Q. State to the court what you heard Mr. Martin and your mother say with reference to the board. A. I heard him say that if she would let him keep the board and

pay on this money that he had got until he got his bank stock, that he would write a check to pay it all back. Q. When? A. As soon as he got his bank stock back. Q. His statement referred to which bank stock? A. Scottdale bank. Q. How many times did you ever hear them talking about the matter? A. Three times at least. Q. Did your mother agree to that? A. Yes. Q. Do you remember the date you moved into the new house? A. Yes. Q. When? A. About the first to the fifteenth of October, 1907. Q. Do you remember the date of Mr. Martin's death? A. May 9, 1909. . . . Q. I will ask whether or not you heard any conversation between Mr. Martin and your mother soon before Mr. Martin's death with reference to him giving your mother a note or writing for the board that had accumulated since they moved into the new house? A. Yes. Q. What did he say with reference to the board money? A. He said that he would have to give her writings so that if anything happened she could get her money, and also that Mary could get her $100 and interest. Q. How long before his death did this conversation occur? A. I could not tell, not so awful long. Q. Two or three months? A. Four or five months as near as I can tell. Q. In the neighborhood of fifteen months after you moved into the new house? A. Yes." The testimony shows that Mr. Martin had resided with the appellant's family for many years in an old house known as the Sutton house which he owned, and that the deceased had constructed a new house and in doing so had become indebted to the National Bank of Scottdale in the sum of $1,500 and that he had put up his bank stock as collateral for that loan. The evidence also shows that this loan had not been paid at the time of his death and that the bank presented its claim at the distribution and it was allowed.

Maggie Powell was produced and testified: "Q. Did you ever live at Everson? A. Yes, I lived with Mrs. Moorhead. Q. Did you live with her in the fall of 1907? A. Yes. Q. About the time this new house was built and

they moved in?  A. Not when they moved in, when they lived next door, and I was with them until the house was not quite ready.  Q. Do you know anything about the arrangement Mr. Martin made with Mrs. Moorhead with reference to his board from that time on?  A. Yes, I heard him say he was going to let the board stand until he could get his money back from the bank.  Q. What board was he paying at that time?  A. $20.00 a month.  Q. When was this conversation with reference to the time you left? A. A couple of weeks before I left. . . .  Q. All the time you were there Mr. Martin was still boarding with them. A. Yes.  Q. And you say the agreement was that the board should stand until he paid the money back to the bank, and then he would pay for all at once?  A. Yes.  Q. He told them that he had his stock up in the bank?  A. Yes. Q. And that was the reason he gave to Mrs. Moorhead for wanting the board to stand?  A. Yes."

Mrs. Ida Dayton also testified: Q. Then the Moorheads cleaned up the new house and you assisted?  A. Yes. Q. About that time did you hear any conversation between Mr. Martin and Mrs. Moorhead with reference to his board bill?  A. Yes.  Q. State to the court the conversation you heard—what Mr. Martin and Mrs. Moorhead said.  A. He said, Mrs. Moorhead, if you will leave the board go until I get my stock in the bank, then I will write you a check for the amount and give it all to you. Q. I believe the stock he meant was the stock he had up as collateral security?  A. Yes.  Q. He told you it was in the bank?  A. Yes.  Q. Do you remember the time when they moved into the new house?  A. Yes, between the first and fifteenth of October, 1907.  Q. Did Mrs. Moorhead agree to that?  A. Yes.  Q. Was there anything said by Mr. Martin or Mrs. Moorhead as to the amount? A. $20.00 was what he had been paying her. . . ."

The learned court did not refuse the appellant's claim on the ground that the witnesses were unworthy of belief, but for the reason that "the testimony does not show any contract or any demand made by the claimant on the

decedent during his lifetime, or of any payment made by the decedent." We think the testimony does show that the decedent was boarding with the Moorheads for a long time at $20.00 per month and that he was paying the same prior and up to the time that they moved into the new house. The contention of the appellant is that because the decedent was indebted to the bank and had put up his bank stock with that institution as collateral for the loan, that he desired that the appellant wait on him for his board money after they went into the new house until he should pay the loan and recover his bank stock. And then, he would pay Mrs. Moorhead for his boarding with a check for the whole amount. There is clear and pointed testimony that Mrs. Moorhead agreed to this arrangement. It is to be noted that at the time of his death the decedent had not paid the money he borrowed from the bank and had not recovered his bank stock. Remembering that he was not to pay Mrs. Moorhead for his boarding until after he had recovered his bank stock, no presumption here arises that she had been paid. Again, the agreement proved was that after recovering his bank stock he would give her a check for the whole amount of his board and there is not the slightest showing that he ever paid by a check or otherwise for his boarding after they moved into the new house. If the decedent had given Mrs. Moorhead a check for his boarding it is highly improbable that the check could not have been found or some evidence of its payment by the bank produced.

The learned court below decided as a matter of law that the testimony was not sufficient to sustain the appellant's claim and to rebut the presumption of periodical payments, and in reaching this conclusion relied on Cummiskey's Estate, 224 Pa. 509. But in that case the decedent was a woman of means and she boarded for several years with a former domestic servant and was nursed by the latter, and a claim presented by the latter against the estate of the former for boarding and nursing for three years prior to the death of the decedent was not allowed because

there was no evidence to warrant a finding that the claimant had not received compensation. In that case the Supreme Court, through Mr. Justice MESTREZAT, said: "Why a party of ample means should for more than three years board with and be nursed by a former servant with limited means without paying or having any demand made upon her for payment of a sum aggregating $520 per year due for such service seems incredible; and before such claim is awarded out of a decedent's estate satisfactory evidence of nonpayment should be produced."

But in the present case there is satisfactory evidence of a request by the decedent for an extension of time for the payment of his board bill and an agreement to this on the part of the claimant and the reason is given why the decedent desired to withhold payment until the happening of a certain contingency.

The next case relied on is Winfield v. Beaver Trust Co., 229 Pa. 530. But that case was decided on the same ground and presumption relied on in Cummiskey's Estate, supra. In the former case the Supreme Court said: "The same rule is applicable in cases of boarding and nursing under circumstances such as are disclosed in this case. It is the habit and usage of people to pay their board bills as well as for services for nursing at stated periods. This is so well understood in this country that, as in the case of servant's wages, a presumption arises that they are periodically paid." But in the case under consideration here we think there was sufficient evidence of an agreement to pay for the boarding and also to rebut the presumption that it was periodically paid.

The next case relied upon by the court is Wise v. Martin, 232 Pa. 159. That was a case where this court held that the claimant could not recover and the court below was reversed by this court and on appeal to the Supreme Court, the judgment was affirmed on our opinion in Wise v. Martin, 42 Pa. Superior Ct. 443. That case was somewhat close, but one of the controlling points in it was that the appellant had been employed for a long time by the de-

cedent for the sum of $2.00 per week or $10.00 per month, and there was no evidence of a new contract or undertaking on the part of the decedent to pay her a different or larger sum, although there were some loose declarations on his part that he would never be able to pay her sufficiently for her services. We think that case is clearly distinguishable from the present one on account of the facts in evidence in the latter. In our opinion the learned court below erred in refusing to allow the appellant's claim.

But there is another matter for consideration in this case. There is some slight evidence that no rent was to be paid on the new house but it is very slight and is not sufficient to warrant a holding that appellant and her family were to have the use of the new house for nineteen months rent free. At the hearing it was agreed by counsel representing both sides of the controversy that the fair rental value of the Martin property occupied by the Moorheads for nineteen months from October, 1907, was $13.50 per month. It was in evidence that they paid no rent for the nineteen months in question and the learned court below so found. We have reached the conclusion that appellant's claim of $380 for boarding the decedent nineteen months should be allowed, but we think justice requires that $256.50, the rental value of the new house for the same period of time should be set off against that sum. This will leave a balance of $123.50, with interest from the time it should have been paid due the appellant, and unless other equitable or legal reasons appear to the contrary, distribution should be made accordingly.

So far as in harmony with this opinion, the assignments of error are sustained, and the decree is reversed with a procedendo. The cost of this appeal to be paid out of the funds of the estate.